**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YANBING MIN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) ) |
| ARATANA THERAPEUTICS, INC., STEVEN ST. PETER, and CRAIG A. TOOMAN, | ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | ) ) ) |

**CLASS ACTION COMPLAINT**

Plaintiff Yanbing Min ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to itself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Aratana Therapeutics, Inc. ("Aratana" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Aratana securities between March 16, 2015 and February 3, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Aratana Therapeutics, Inc. is a development-stage biopharmaceutical company that develops biomedical therapeutics for animals. The Company offers various products to treat pain and inflammation associated with serious medical conditions in pets. One of the Company's key products is ENTYCE, also known as AT-002 (capromorelin oral solution), an appetite stimulant for dogs.

3.      The Company was founded in 2010 and is headquartered in Leawood, Kansas. Aratana's stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "PETX."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Aratana did not have manufacturing contracts in place sufficient to support manufacturing of ENTYCE at a commercial scale; (ii) consequently, ENTYCE was not likely to be commercially available until late 2017; (iii) accordingly, Aratana had misled investors with respect to the likely timeline for a commercial launch of ENTYCE; and (iv) as a result of the foregoing, Aratana's public statements were materially false and misleading at all relevant times.

2

5.      On February 6, 2017, Aratana filed a report on Form 8-K with the SEC providing

certain business updates.  The report stated, in relevant part:

> In connection with the 2017 North American Veterinary Conference in Orlando,
> Florida, on February 6, 2017, Aratana Therapeutics, Inc. (the "Company")
> provided certain business updates.
>
> **The Company now anticipates that ENTYCE® (capromorelin oral solution)
> will be commercially available by late-2017.**  On February 2, 2017, the Company
> received a response from the U.S. Food and Drug Administration's Center for
> Veterinary Medicine ("CVM") in connection with the Company's post-approval
> supplement request to transfer the manufacturing of ENTYCE® to a new vendor
> in order to produce ENTYCE® at commercial scale. **The CVM has requested
> additional information regarding the proposed transfer in order to complete the
> supplemental application**, and the Company intends to work with the CVM to
> address its request.

(Emphases added.)

6.      On this news, Aratana's share price fell $1.44, or 17.93%, to close at $6.59 on

February 6, 2017.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous

decline in the market value of the Company's securities, Plaintiff and other Class members have

suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b), 14(e) and 20(a) of

the Exchange Act (15 U.S.C. §§78j(b), 78n(e) and 78t(a)) and Rule 10b-5 promulgated

thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is properly laid in this District pursuant to §27 of the Exchange Act and 28

U.S.C. §1391(b).  Aratana's stock trades on the NASDAQ, located within this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Aratana securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Aratana is incorporated in Delaware. The Company's principal executive offices are located at 11400 Tomahawk Creek Parkway, Suite 340, Leawood, Kansas 66211.  Aratana's shares trade on the NASDAQ under the ticker symbol "PETX."

14.     Defendant Steven St. Peter ("St. Peter") has served at all relevant times as the Company's Chief Executive Officer, President and Director.

15.     Defendant Craig A. Tooman ("Tooman") has served at all relevant times as the Company's Chief Financial Officer and Treasurer.

16.     The defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Aratana Therapeutics, Inc. is a development-stage biopharmaceutical company that develops biomedical therapeutics for animals. The Company offers various products to treat pain and inflammation associated with serious medical conditions in pets.   One of the

Company's key products is ENTYCE, also known as AT-002 (capromorelin oral solution), an appetite stimulant for dogs.

**Materially False and Misleading Statements Issued During the Class Period**

18.     The Class Period begins on March 16, 2015, when Aratana filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2014 (the "2014 10-K"). For the quarter, Aratana reported a net loss of $10.26 million, or $-0.30 per diluted share, on revenue of $250,000, compared to net income of $4.47 million, or $0.20 per diluted share, on revenue of $120,000 for the same period in the prior year. For fiscal year 2014, Aratana reported a net loss of $38.82 million or $-1.30 per diluted share, on revenue of $770,000, compared to a net loss of $6.94 million, or $-0.63 per diluted share, on revenue of $120,000 for fiscal year 2013.

19.     In the 2014 10-K, Aratana stated in pertinent part:

*Overview*

AT-002 (capromorelin) is a potent and selective ghrelin agonist, which causes appetite stimulation and growth hormone secretion. We in-licensed AT-002 from RaQualia and are developing AT-002 for the stimulation of appetite in dogs and we are also developing AT-002 for weight gain in cats and dogs.

…

Fear, pain, stress, trauma, organic disease, dental disease, oral fractures and cancer are all possible causes of inappetence in pets. For example, in pets undergoing cancer treatment, the cancer therapy is commonly stopped when the pet loses appetite and body weight. Chemotherapy is the most common form of treatment. According to our market research, inappetence is seen in approximately 30% of dogs who receive chemotherapy, although in clinical studies we observe inappetence rates to be lower but still clinically meaningful. ***We believe that, if approved, AT-002 could be an important medicine in managing inappetence and weight in cancer.***

(Emphases added.)

5

20.     The 2014 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Individual Defendants, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21.     On May 8, 2015, Aratana filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q").  For the quarter, Aratana reported a net loss of $8.77 million, or $-0.26 per diluted share, on revenue of $160,000, compared to a net loss of $9.15 million, or $-0.34 per diluted share, on revenue of $180,000 for the same period in the prior year.

22.     In the Q1 2015 10-Q, Aratana stated in part:

> We recently completed full enrollment in the pivotal field effectiveness study in client-owned dogs with AT-002 (capromorelin, a ghrelin agonist) for appetite stimulation. We anticipate reporting the top-line result in late June 2015.

23.     The Q1 2015 10-Q contained certifications pursuant to SOX by Individual Defendants, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On August 7, 2015, Aratana filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  For the quarter, Aratana reported a net loss of $7.98 million, or $-0.23 per diluted share, on revenue of $230,000, compared to a net loss of $9.28 million, or $-0.32 per diluted share, on revenue of $300,000 for the same period in the prior year.

25.     The Q2 2015 10-Q contained certifications pursuant to SOX by Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     On November 6, 2015, Aratana filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 10-Q").  For the quarter, Aratana reported a net loss of $54.44 million, or $-1.58 per diluted share, on revenue of $230,000, compared to a net loss of $10.13 million, or $-0.35 per diluted share, on revenue of $40,000 for the same period in the prior year.

27.     The Q3 2015 10-Q contained certifications pursuant to SOX by Individual Defendants, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     In the Q3 2015 10-Q, Aratana stated in pertinent part:

On August 26, 2015, we submitted the technical section for effectiveness for AT-002 (capromorelin, a ghrelin agonist), which included the results of the positive pivotal field effectiveness study conducted under protocol concurrence with the CVM. We anticipate a response from the CVM by February 22, 2016. On September 30, 2015, we received from the CVM the CMC technical section complete letter. We received the target animal safety technical section complete letter in March 2015. Accordingly, we anticipate submitting an NADA in early 2016, which if approved, is expected to enable us to commence commercialization of the product in mid-2016 or shortly thereafter. We are continuing our interactions with European national agencies, and believe that our discussions and efforts will lead to the successful development of AT-002 outside the U.S.

29.     On March 15, 2016, Aratana filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K").  For the quarter, Aratana reported a net loss of $12.86 million, or $-0.37 per diluted share, on revenue of $60,000, compared to a net loss of $10.26 million, or $-0.30 per diluted share, on revenue of $250,000 for the same period in the prior year. For fiscal year 2015, Aratana reported a net loss of $84.05 million or $-2.45 per diluted share, on revenue of $680,000, compared to a net loss of $38.82 million or $-1.30 per diluted share, on revenue of $770,000 million for fiscal year 2014.

30.     In the 2015 10-K, Aratana stated in part:

*ENTYCE*

During 2015, we received the target animal safety technical section complete letter and the CMC [Chemistry, Manufacturing and Controls] technical section complete letter, and on February 23, 2016, we announced the receipt of the technical section complete letter for effectiveness from the CVM for ENTYCE for appetite stimulation in dogs.

…

We anticipate submitting an administrative NADA [new animal drug application] by the end of March 2016, which if approved, is expected to enable us to commence commercialization of ENTYCE in the United States in late-2016 or shortly thereafter. We are continuing our interactions with European national agencies, and believe that our discussions will lead to the successful development of capromorelin outside the U.S. We believe that the first claim in dogs for Europe will be either acute appetite stimulation or a chronic use weight gain claim. We also intend to pursue capromorelin for weight gain in dogs in the U.S. as a label extension after approval of the appetite stimulation claim.

...

We expect to receive FDA approval for GALLIPRANT, ENTYCE and NOCITA in 2016, and begin commercializing product candidates GALLIPRANT in 2016 and ENTYCE in late-2016 or shortly thereafter and NOCITA in 2016.

31.     The 2015 10-K contained certifications pursuant to SOX by Individual Defendants, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     On May 6, 2016, Aratana filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q"). For the quarter, Aratana reported a net loss of $18.07 million, or $-0.52 per diluted share, on revenue of $170,000, compared to a net loss of $8.77 million, or $-0.26 per diluted share, on revenue of $160,000 for the same period in the prior year.

33.     In the Q1 2016 10-Q, Aratana stated in part:

*ENTYCE*

On March 22, 2016, we announced we filed an administrative new animal drug application ("NADA") with the CVM for ENTYCE (capromorelin oral solution) for appetite stimulation for dogs. The Animal Drug User Fee Act ("ADUFA") date for approval has been set for May 21, 2016. If approved, we anticipate commercial availability of ENTYCE to veterinarians in late-2016 or shortly thereafter.

34.     The Q1 2016 10-Q contained certifications pursuant to SOX by Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     On August 5, 2016, Aratana filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q").  For the quarter, Aratana reported net income of $21.18 million, or $0.61 per diluted share, on revenue of $38.05 million, compared to a net loss of $7.98 million, or $-0.23 per diluted share, on revenue of $230,000 for the same period in the prior year.

36.     In the Q2 2016 10-Q, Aratana stated in part:

*ENTYCE*

On May 16, 2016, the FDA's CVM approved ENTYCE (capromorelin oral solution) for appetite stimulation in dogs. We intend to commercially launch ENTYCE in the United States in the first quarter of 2017 in conjunction with the North American Veterinary Conference and other major veterinary conferences.

37.     The Q2 2016 10-Q contained certifications pursuant to SOX by Individual Defendants, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.     On November 4, 2016, Aratana filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q").  For the quarter, Aratana reported a net loss of $13.37 million, or $-0.38 per diluted share, on revenue of $40,000, compared to a net loss of $54.44 million, or $-1.58 per diluted share, on revenue of $230,000 for the same period in the prior year.

39.     In the Q3 2016 10-Q, Aratana stated in part:

*GALLIPRANT and ENTYCE*

During  the third quarter  of  2016, we  continued  to  transfer  the  manufacturing
technology processes for GALLIPRANT and ENTYCE to our identified active
pharmaceutical ingredient ("API") and formulated product contract manufacturers
to provide commercial supplies. We have completed the required manufacturing
validation  work  in  regards  to  API  for  both  GALLIPRANT  and  ENTYCE.
We made additional manufacturing filings with the FDA to obtain approvals that
are required for commercial launch. Further, we continue to complete the required
manufacturing validation work of formulated product and packaging to produce
inventory for commercial availability.

40.     The  Q3  2016  10-Q  contained  certifications  pursuant  to  SOX  by  Individual

Defendants, stating that the financial information contained in the Q3 2016 10-Q was accurate

and disclosed any material changes to the Company's internal control over financial reporting.

41.     The  statements  referenced  in  ¶¶  18-40  were  materially  false  and  misleading

because  defendants  made  false  and/or  misleading  statements,  as  well  as  failed  to  disclose

material  adverse  facts  about  the  Company's  business,  operational  and  compliance  policies.

Specifically, defendants made false and/or misleading statements and/or failed to disclose that:

(i) Aratana did not have manufacturing contracts in place sufficient to support manufacturing of

ENTYCE at a commercial scale; (ii) consequently, ENTYCE was not likely to be commercially

available until late 2017; (iii) accordingly, Aratana had misled investors with respect to the likely

timeline for a commercial launch of ENTYCE; and (iv) as a result of the foregoing, Aratana's

public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

42.     On February 6, 2017, Aratana filed a report on Form 8-K with the SEC providing

certain business updates.  The report stated, in relevant part:

In connection with the 2017 North American Veterinary Conference in Orlando,
Florida, on February 6, 2017, Aratana Therapeutics, Inc. (the "Company")
provided certain business updates.

*The Company now anticipates that ENTYCE® (capromorelin oral solution) will be commercially available by late-2017*. On February 2, 2017, the Company received a response from the U.S. Food and Drug Administration's Center for Veterinary Medicine ("CVM") in connection with the Company's post-approval supplement request to transfer the manufacturing of ENTYCE® to a new vendor in order to produce ENTYCE® at commercial scale. *The CVM has requested additional information regarding the proposed transfer in order to complete the supplemental application*, and the Company intends to work with the CVM to address its request.

(Emphases added.)

43.     On this news, Aratana's share price fell $1.44, or 17.93%, to close at $6.59 on February 6, 2017.

44.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Aratana securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Aratana securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds

or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Aratana or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

47.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Aratana;

- whether the Individual Defendants caused Aratana to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Aratana securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

51.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Aratana securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Aratana securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

52.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

53.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Aratana securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Aratana securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

57.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Aratana securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Aratana's finances and business prospects.

58.     By virtue of their positions at Aratana, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Aratana, the Individual Defendants had knowledge of the details of Aratana's internal affairs.

60.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Aratana.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Aratana's

businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Aratana securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Aratana's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Aratana securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

61.   During the Class Period, Aratana securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Aratana securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Aratana securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Aratana securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

62.   By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

16

63.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     During the Class Period, the Individual Defendants participated in the operation and management of Aratana, and conducted and participated, directly and indirectly, in the conduct of Aratana's business affairs.  Because of their senior positions, they knew the adverse non-public information about Aratana's misstatement of income and expenses and false financial statements.

66.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aratana's financial condition and results of operations, and to correct promptly any public statements issued by Aratana which had become materially false or misleading.

67.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aratana disseminated in the marketplace during the Class Period concerning Aratana's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aratana to engage in the wrongful acts

complained of herein. The Individual Defendants therefore, were "controlling persons" of Aratana within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aratana securities.

68.     Each of the Individual Defendants, therefore, acted as a controlling person of Aratana.  By reason of their senior management positions and/or being directors of Aratana, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Aratana to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Aratana and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

69.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aratana.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

18

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 6, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com
            hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _____Yanbing Min_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Aratana Therapeutics, Inc. ("Aratana" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Aratana securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Aratana securities during the class period**,** including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Aratana securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


**Executed** _____
02/06/2017
             **(Date)**


_____
Yanbing Min
             **(Signature)**


_____
Yanbing Min
             **(Type or Print Name)**

**ARATANA THERAPEUTICS, INC. (PETX)**                                    **Min, Yanbing**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 1/10/2017 | Purchase | 60 | $8.2250 |