USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/6/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

IN RE ARATANA THERAPEUTICS INC. SECURITIES LITIGATION

17 Civ. 880 (PAE)

OPINION & ORDER

------------------------------------------------------------X

------------------------------------------------------------X

YANBING MIN, *individually and on behalf of all others similarly situated*,

        Plaintiff,

-v-

ARATANA THERAPEUTICS INC., STEVEN ST. PETER, and CRAIG A. TOOMAN,

        Defendants.

17 Civ. 880 (PAE)

------------------------------------------------------------X

MICHAEL DEZI, *individually and on behalf of all others similarly situated*,

        Plaintiff,

-v-

ARATANA THERAPEUTICS INC., STEVEN ST. PETER, and CRAIG A. TOOMAN,

        Defendants.

17 Civ. 1446 (PAE)

------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

    In February 2017, the above two putative class actions were filed, under the federal securities laws, on behalf of purchasers of Aratana Therapeutics, Inc. ("Aratana") securities

between March 16, 2015, and February 3, 2017 (the "Class Period"). Plaintiffs in each case claim that biopharmaceutical company Aratana and the two individual defendants—Aratana's president and director, and its chief financial officer and treasurer—made false and misleading statements, and/or failed to disclose certain information, regarding the timeline for commercial availability of ENTYCE, an Aratana product. But, on February 6, 2017, after Aratana disclosed in a filing with the Securities and Exchange Commission ("SEC") that it now anticipated that ENTYCE would not be commercially available until late 2017, Aratana stock prices fell approximately 18%, harming plaintiffs.

Pending now are two motions filed by Aratana investors on April 7, 2017. The movants are: (1) Joseph Bessent, John Corbitt, and Eric Pearson (the "Investor Group"); and (2) Jesse Stone, an individual. Each seeks to consolidate these actions. Each movant or group also seeks appointment as lead plaintiff(s) and appointment of his or its attorneys as lead counsel. On April 20, 2017, Stone filed a notice stating that he did not oppose the Investor Group's motion, conceding that he had not asserted the largest financial interest in the relief sought by the class, while stating that, if "the Court determines that the [Investor Group] are inadequate or incapable of representing the class, Stone continues to be willing and able to serve as Lead Plaintiff." Dkt. 17 at 2.

For the reasons that follow, the Court (1) consolidates these two actions, (2) appoints as lead plaintiffs the Investor Group, and (3) appoints as lead counsel the Investor Group's counsel, Levi & Korsinsky LLP.

I. **Background**[1]

---

[1] The following facts are drawn from Yanbing Min's Complaint ("Min Compl."), No. 17 Civ. 880 (PAE), Dkt. 1, Michael Dezi's Complaint ("Dezi Compl."), No. 17 Civ. 1446 (PAE), Dkt. 1,

2

Aratana is a pet therapeutics company that licenses, develops, and commercializes biopharmaceutical products for animals. Dezi Compl. ¶¶ 2, 17; Min Compl. ¶ 17. Aratana's stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "BAK." Dezi Compl. ¶ 3; Min Compl. ¶ 13. At all relevant times, defendant Steven St. Peter was Aratana's Chief Executive Officer ("CEO"), President, and Director, Dezi Compl. ¶ 13; Min Compl. ¶ 14; and defendant Craig Tooman was Aratana's CFO and Treasurer. Dezi Compl. ¶ 14; Min Compl. ¶ 15.

One of Aratana's "key products" is ENTYCE, a capromorelin oral solution also known as AT-002. Dezi Compl. ¶ 2; Min Compl. ¶ 17. ENTYCE is an appetite stimulant for dogs. Dezi Compl. ¶ 2; Min Compl. ¶ 17. In discussing its development of ENTYCE in its 2014 annual report, Aratana stated that lack of appetite in pets may be caused by "[f]ear, pain stress, trauma, organic disease, dental disease, oral fractures[,] and cancer," and can interfere with chemotherapy treatment, which "is commonly stopped when the pet loses appetite and body weight." Dezi Compl. ¶ 21; Min Compl. ¶ 19.

Throughout the Class Period, plaintiffs allege, Aratana misrepresented the likely timeline in which ENTYCE would become commercially available. Dezi Compl. ¶¶ 4–5; Min Compl. ¶¶ 41. In public filings, Aratana and the individual defendants made statements about ENTYCE's development and the anticipated time of its commercial launch. Dezi Compl. ¶¶ 21–34; Min Compl. ¶¶ 18–40. Plaintiffs allege that these statements were false and/or misleading and/or failed to disclose that ENTYCE was unlikely to be commercially available before late 2017. Dezi Compl. ¶ 35; Min Compl. ¶ 41.

---

and the parties' submissions on the lead-plaintiff motions, as cited herein. The Court takes these facts as true solely for the purpose of resolving these motions.

On February 6, 2017, Aratana filed a report on Form 8-K with the SEC, in which Aratana stated that it "now anticipates that ENTYCE . . . will be commercially available by late-2017." Dezi Compl. ¶ 36; Min Compl. ¶ 42. That day, the price of shares of Aratana fell approximately 18%. Dezi Compl. ¶ 37; Min Compl. ¶ 43.[2]

On February 6, 2017, Min filed a Complaint. *See* No. 17 Civ. 880 (PAE), Dkt. 1. On February 17, 2017, Dezi filed a Complaint as well. No. 17 Civ. 1446 (PAE), Dkt. 1. The class period as defined in the Complaints is between March 16, 2015 and February 3, 2017. Plaintiffs allege that, throughout the class period, Aratana and the individual defendants made false and misleading statements, and failed to disclose material adverse facts about Aratana's business, operational, and compliance policies. Min Compl. ¶ 4. "Specifically, Defendants made false and/or misleading statements and/or failed to disclose that . . . Aratana did not have manufacturing contracts in place sufficient to support manufacturing of ENTYCE at a commercial scale; [and that,] consequently, ENTYCE was not likely to be commercially available until late 2017." *Id.*; *see also* Dezi Compl. ¶ 35. Plaintiffs allege violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and Rule 10b-5. Dezi Compl. ¶ 8; Min Compl. ¶ 1.

## II. Consolidation

### A. Legal Standards

Federal Rule of Civil Procedure 42(a) provides that, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at

---

[2] The complaints offer slightly different allegations as to the closing price of Aratana stock on Monday, February 6, 2017. Dezi states that Aratana stock "fell from a closing price of $8.02 per share on February 3, 2017, to a closing price of $6.58 per share on February 6, 2017, *a drop of approximately 18%.*" Dezi Compl. ¶ 37 (emphasis in original). Min states that "Aratana's share price fell $1.44, or 17.93%, to close at $6.59 on February 6, 2017." Min Compl. ¶ 43.

4

issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

Rule 42(a) "empowers a trial judge to consolidate actions for trial when there are common questions of law or fact," and where consolidation will avoid needless costs or delay. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *see also Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). "Typically, considerations of judicial economy favor consolidation, but 'the benefits of efficiency can never be purchased at the cost of fairness.'" *M & T Mortg. Corp. v. White*, No. 04 Civ. 4775 (WFK) (VVP), 2012 WL 715896, at *1 (E.D.N.Y. Feb. 14, 2012) (quoting *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993)), *report and recommendation adopted*, No. 04 Civ. 4775 (WFK) (VVP), 2012 WL 954651 (E.D.N.Y. Mar. 5, 2012). Before a Court orders consolidation, it must consider several factors and determine, *inter alia*, whether the gains in efficiency and economy are outweighed by the "risks of prejudice and possible confusion." *Johnson*, 899 F.2d at 1284 (citation and internal quotation marks omitted).

In the securities context, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, provides that consolidation should occur where multiple actions assert "substantially the same claim." *Id.* § 78u–4(a)(3)(B)(ii).

**B.     Analysis**

Consolidation here is unopposed and is clearly merited. Both Complaints sue Aratana under the Exchange Act "on behalf of all persons or entities" who acquired Aratana securities between March 16, 2015 and February 3, 2017. Both center on the same alleged facts: Aratana's false and misleading statements about the timeline of the commercial launch of ENTYCE, and its failure to disclose that ENTYCE would not be available before late 2017. The defendants in

the two suits are also common: They include Aratana and executives St. Peter and Tooman. Dezi Compl. ¶¶ 12–14; Min Compl. ¶¶ 13–15. The lawsuits are, overwhelmingly, similar.

Courts routinely consolidate securities class actions arising from the same allegedly actionable statements. *See, e.g., Simmons v. Spencer*, No. 13 Civ. 8216 (RWS), 2014 WL 1678987, at *2 (S.D.N.Y. Apr. 25, 2014); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008). All relevant factors support consolidation here. Accordingly, the Court consolidates these actions.

### III. Selecting the Lead Plaintiff: The PSLRA Requirements

Motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under the securities laws are governed by the Private Securities Litigation Reform Act ("PSLRA"). *In re Millennial Media, Inc. Sec. Litig.*, No. 14 Civ. 7923 (PAE), 2015 WL 566460, at *4 (S.D.N.Y. Feb. 10, 2015); *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012). The PSLRA directs the court to appoint as lead plaintiff the party or parties "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). There is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) has either "filed a complaint or made a motion in response to a notice," *id.* § 78u–4(a)(3)(B)(iii)(I)(aa); (2) in the determination of the Court, has the "largest financial interest in the relief sought by the class," *id.* § 78u–4(a)(3)(B)(iii)(I)(bb); and (3) satisfies all requirements of Federal Rule of Civil Procedure 23, which governs class actions, *see id.* § 78u–4(a)(3)(B)(iii)(I)(cc).

### A. Notice

All putative lead plaintiffs satisfy the first requirement: Each has either filed a complaint or a timely motion for lead plaintiff status. *See* 15 U.S.C. § 78–u4(a)(3)(B)(iii)(I); *City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010).

### B. Financial Interest

In determining who has the largest financial stake in the litigation, courts in this Circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). These "*Lax*" factors include:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*City of Monroe*, 269 F.R.D. at 293.

Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("Although courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."), *reconsidered on other grounds, In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *Bo Young Cha*, 2012 WL 2025850, at *2; *Reimer v. Ambac Fin. Group Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM) (KNF), 2007 WL

7

2197836, at *6–7 (S.D.N.Y. July 31, 2007); *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104–05 (S.D.N.Y. 2007); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[I]n determining the largest financial interest, 'most courts simply determine which potential lead plaintiff has suffered the greatest total losses.'").

Here, the lead plaintiff candidates lost dramatically different amounts upon Aratana's stock-price drop on February 6, 2017. The Investor Group lost approximately $74,044.21. *See* Dkt. 12 at 11. Stone lost approximately $5,465. *See* Dkt. 15 at 10. The Investor Group's losses are thus more than 13 times greater than Stone's and, as noted above, Stone has conceded that his is not the largest financial interest of the lead plaintiff movants. *See* Dkt. 17 at 2. Under the PSLRA, Stone's financial interest is far too small, relative to the Investor Group, for Stone to credibly bid for appointment. *See* 15 U.S.C. §§ 77z–1(a)(3)(B)(iii); 78u–4(a)(3)(B)(iii).

Nor is this a case where it would serve the class's interests to appoint co-lead plaintiffs because, for instance, one investor suffered the greatest losses but another was the only investor to have held the relevant securities for the full class period. *See, e.g., Millennial Media, Inc. Sec. Litig.*, 2015 WL 566460, at *5. Here, no lead plaintiff candidates held Aratana stock for the full class period.

In sum, as between the two lead plaintiff candidates, applicable considerations point to the Investor Group, the investor with, by far, the largest losses.

### C. Rule 23 Requirements

The PSLRA's final requirement is that the proposed lead plaintiff satisfy Rule 23's requirements for class certification: numerosity, commonality, typicality, and adequacy. At this early stage of litigation, however, "only the last two factors—typicality and adequacy—are

8

pertinent." *Bo Young Cha*, 2012 WL 2025850, at *6 (quoting *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)).

Lead plaintiffs' claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010) (citations omitted). A lead plaintiff is adequate where it "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Glauser*, 236 F.R.D. at 189 (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)). Here, "[t]he claims of [the Investor Group] are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49–50 (S.D.N.Y. 1998) (citations omitted).

No party or movant has contested the Investor Group's typicality. And no party or movant has claimed that the Investor Group "will not fairly and adequately protect the interests of the class" or is subject to "unique defenses" that render the Investor Group incapable of adequately representing the class. 15 U.S.C. § 78u–(4)(a)(3)(B)(iii)(II).

Because the Investor Group has satisfied all of the PSLRA requirements as of this early stage, the Court appoints the Investor Group lead plaintiff.

## IV. Appointing Lead Counsel

The most adequate plaintiff may retain counsel to represent the class, subject to the Court's approval. *Id.* § 78u–(4)(a)(3)(B)(v). The Investor Group has selected the law firm of Levi & Korsinsky LLP. Having reviewed the firm's submissions as to its pertinent background and experience, including its experience litigating securities class actions, the Court finds that

9

this firm is qualified to serve as lead counsel. Accordingly, the Court appoints Levi & Korsinsky LLP as lead counsel.

## CONCLUSION

To summarize, these two cases, No. 17 Civ. 880 (PAE) and No. 17 Civ. 1446 (PAE), are now consolidated for all purposes, and shall proceed under the name, *In re Aratana Therapeutics Inc. Securities Litigation*, and under the case number, No. 17 Civ. 880 (PAE). The Investor Group's motion seeking appointment as lead plaintiff is granted. Stone's motion to serve as lead plaintiff is denied. The Court appoints Levi & Korsinsky LLP as lead counsel.

The Clerk of Court is directed to terminate the motions pending at No. 17 Civ. 880 (PAE), Dkts. 11 and 14. In light of the consolidation, the Clerk of Court is also directed to close the Dezi case, No. 17 Civ. 1446 (PAE).

The Court directs the parties to meet and confer and, by two weeks from the date of this order, to submit a joint letter to the Court with an efficient proposed schedule for next steps in this case—including proposed dates for the filing of (1) a consolidated amended complaint and (2) defendants' response. If defendants anticipate that their response will take the form of a motion to dismiss, the parties shall include proposed dates for the opposition and reply briefs as well.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: June 6, 2017
       New York, New York